[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff and defendant married in Bristol, Connecticut, eight years ago, on May 27, 1983. It was the first marriage for each. They have resided continuously in this state for the past twelve months. Neither are recipients of public assistance from the State of Connecticut or of any governmental subdivision.
There are two children of their marriage: Monica L. Kraus, born February 1, 1985, now six years of age, and Ashley L. Kraus, born October 17, 1986, who will be five years of age in less than one week.
This matter was referred to this court as a contested custody CT Page 9147 matter. It was clear from the file and from credible testimony that defendant father had sought sole custody and extensive visitation had moderated his position on the opening day of trial to joint custody and three out of every four weekends in his proposed custody order, and in response to cross examination on the second day of trial by the attorney for the minor children, Attorney Denise McNair, he agreed to accept alternate weekends. Attorney McNair's contribution was a dramatic example of the wisdom of appointing an attorney for minor children in contested custody cases. Her non-adversarial posture elicited a non-adversarial response.
The defendant's new position resulted in settlement of the custodial and visitation issues that very day. Although the stipulation submitted by the parties represented a paternal visitation schedule somewhat in excess of what the court was contemplating at that time, the October 4, 1991 mutual agreement was never-the-less found to be fair and equitable by the court, and was accepted by it. It is incorporated into this judgment.
The financial issues remain unresolved and have been reviewed by this court with applicable statutes, case law and testimony in mind.
Defendant husband testified to his good health, while noting that he has experienced a crushed ankle. A high school graduate, he has taken electronic technical school courses. He began his employment at Napco as a field service technician and has risen to "Designer B" status, where he creates electrical designs for Napco's equipment. Favored by his employer, Mr. Kraus testifies to being given days off to visit with his children and being allowed to make up the time. He further reports a willingness of his employer to permit him to work at home with a modem in order to facilitate his visitation. Clearly, Mr. Kraus' future employment potential with Napco is good and carries with it the potential for future enhancement. It offers him an opportunity for future acquisition of capital assets and income superior to that of his wife.
Born in Germany, the plaintiff wife came to the United States at the age of two. She left Bristol Central High School in her senior year for a nurse's aide position and has held only similar jobs since, moving from Bristol Convalescent Home to Caren Manor, to Countryside Manor and to New Britain General Hospital. Since leaving Bristol Central, plaintiff has earned a high school equivalency diploma. The court finds she has health problems, limiting the tasks she can undertake, and that her future employment range is quite modest, limited to her current level of skill and compensation. Her counsel capsulized her employment skills with insight when he observed that this parent of two had been hired to mother others.
A great deal of time was spent pursuing the defendant's claim CT Page 9148 that Mrs. Kraus was capable of producing increased income. At final argument she was projected for an additional 2.6 hours a week at an hourly rate higher than she now reports. The court finds these issues to be minimal and more adversarial than real, given the credible evidence, and finds further that Mrs. Kraus' earnings are appropriate to her available employment, her physical limitations and her modest training and skills.
Mrs. Kraus' mother lives with her, paying $80 a week as room and board. The court does not consider that sum as income to the plaintiff, finding no evidence that it exceeds the cost of the mother's presence, and no evidence that mother's presence is more than month to month.
With regard to child support, the court finds the child support guidelines to be equitable and appropriate in this case. The negotiated resolution of the custodial and visitation issues results in a pattern generally similar to the traditional visitation pattern of non-custodial parents. The court finds no bases for rebutting the application of the guidelines after reference to the Deviation Criteria set forth therein ((a)(3)). Based upon their sworn financial affidavits and their testimony, the court finds Mr. Kraus' net income to total $419.22 and Mrs. Kraus' net income to total $182.94 for the purposes of guideline application.
There was substantial dispute in the principals' testimony regarding contributions to the family home. When their testimony was in conflict, the court found Mr. Kraus to be the less credible of the two spouses. When some details of his fiscal testimony were challenged, he to often uncharacteristically claimed to have no recall, this in the midst of meticulously recalled custodial fact patterns and the ability to produce historic documentation of obscure financial information favorable to his position. His memory lapse seems most pronounced when he was challenged with questions that might support his wife's position.
Mrs. Kraus claims a financial advantage because her father negotiated a particularly favorable purchase price for the lot on which the family home was constructed. The evidence does not support her claim.
Mr. Kraus claims an advantage because he helped in the construction of the family home to a far greater degree than did Mrs. Kraus. The court does not support this claim, finding that each of the parties made equal marital contributions. Mrs. Kraus had employment, homemaking activities and primary caretaking responsibilities. Mr. Kraus had employment and construction projects in the family home. See O'Neill v. O'Neill, 13 Conn. Appel. 300, 311.
Mr. Kraus claims a financial advantage because funds in his name CT Page 9149 were used towards the purchase and construction of the family home. The court finds that the parties were cohabiting, were both employed, and were combining their incomes and sharing their expenses for approximately twenty months preceding the date of their marriage. During their pre-marital cohabitation, Mr. Kraus's work for Napco had him living on an expense account in the field for extended periods of time, enabling the cohabitors to save substantial amounts of their joint income. That Mr. Kraus chose to place those joint funds in a savings account and a certificate of deposit, both carrying his name cannot become a basis for denying Mrs. Kraus her fair share of those funds.
Mr. Kraus claims a gift from his grandparents of bonds, following almost two years of open cohabitation with Mrs. Kraus. Transferred by his grandparents the week before the wedding, and received considerably after the nuptials, Mr. Kraus maintains was not a wedding gift to the bride and groom but was a private gift for him alone. The court does not find that claim credible, nor does it accept Mr. Kraus's claim regarding his sole entitlement to the Northeast Utilities stock.
The court does not find either party to have been the sole cause of the breakdown of the marriage although, after reviewing the testimony of each of the principals, it does find the defendant husband to have been more substantial source of fault.
Plaintiff wife seeks no alimony, preferring to be assigned a portion of the equity in the family home in lieu thereof. Defendant husband offers no alimony and offers no portion of the marital assets in its stead. Had the plaintiff requested an alimony award, this court would have ordered six years of such payments.
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievably, a decree of dissolution shall enter and the following orders shall apply in addition to the October 4, 1991 Custody Agreement attached hereto:
1. CHILD SUPPORT.
a. Defendant shall pay plaintiff $171 a week child support as reflected in the child support guidelines.
b. The total shall be allocated $60 for Monica, $111 for Ashley.
2. ALIMONY.
Neither party shall pay alimony to the other. CT Page 9150
3. MEDICAL INSURANCE.
a. Defendant shall maintain medical insurance for the benefit of the minor children.
b. All unreimbursed medical, dental, optical, mental health, prescription, or other expenses related to the care of the children's health shall be paid equally by the parties.
c. The provisions of 46b-84(c) shall apply.
4. LIFE INSURANCE.
a. Defendant father shall maintain $150,000 of life insurance on his life, naming the plaintiff mother as irrevocable beneficiary thereof until both children are eighteen years of age, such sum being intended for the benefit of the children of the marriage.
b. Defendant father shall furnish plaintiff mother, on her request, no more than once each calendar year, proof that the life insurance exists in the specified amount and that the beneficiary of said insurance is as required by this order.
c. If $150,000 is not received by the beneficiary at the time of death, the unpaid balance thereof shall constitute a charge against the estate of the defendant and shall become an indebtedness of the estate in favor of the beneficiary.
5. TAX EXEMPTIONS.
a. Defendant will be entitled to claim Monica as his tax exemption, provided he is current with all payments called for by him in these orders as they may be modified from time to time.
b. Plaintiff mother will be entitled to claim Ashley as her tax exemption.
6. FAMILY HOME.
a. Husband shall forthwith transfer and convey to wife by quit claim deed all of his right, title and interest in and to 60 Duane Lane, Burlington, Connecticut, free of any claim thereto by husband.
b. Wife shall sell the family home with all reasonable speed. It is to be offered at a realistic sales price, setting and resetting the price from time to time until it reflects the then current market value and attracts a reasonable offer.
c. Immediately upon the completion of the sale, husband shall receive one-third of the net proceeds of the sale of the family home CT Page 9151 after first deducting commissions paid, taxes due to the date of sale, mortgage principle and interest due to the date of sale and all other unpaid debts, liens or encumbrances against the family home due as of the date of closing, including seller's attorney's fees, all normal closing adjustments and costs and those items set forth herein at 7d, 9b, 9c and 10b.
d. Because it is the further order of this court that defendant husband shall receive full title to the following marital assets shown on husband's sworn financial affidavit: proceeds of the sale of the CLOP stock ($2125.92), his 401K and stock program ($27,713.59) and his Employee Stock Ownership ($1380.66), plaintiff wife's one-half share of those assets shall be deducted from husband's one-third share of the family home.
e. After all the debts, liens and encumbrances have been brought current, plaintiff wife shall become solely responsible for the existing mortgages, taxes and all subsequent liens and encumbrances and debts on 60 Duane Lane, Burlington, Connecticut, and hold the defendant harmless therefrom.
8. PERSONAL PROPERTY.
a. Although little, if any, evidence of the quality, quantity or genesis of the marital furniture or furnishings was offered during trial, defendant husband concluded with a final argument request for one-half the marital personalty. Having been denied an adequate foundation, the court feels unprepared to respond to that request.
b. Defendant husband shall receive so much of the furnishings of the family home as plaintiff wife determines are excess when she and the children move into their new residence. Plaintiff wife is urged to adopt a reasonable attitude towards the personalty and, while giving high priority to establishing a comfortable home for the children, it is hoped she would be generous in transferring surplus items, giving special attention to those items that originated with husband's family.
9. ASSETS, DEBTS.
a. Each of the parties shall retain their automobiles.
b. The Visa bill shall be equally paid by each of the parties from their individual shares of the net proceed of the sale of the family home on the date of said sale.
c. Moneys from the net proceeds of the sale of the family home sufficient to cover the claim of the Terryville Construction Company shall be held in escrow by Attorney Willam Eddy and disbursed by him when that dispute is settled. Any portion unused in the settlement of the dispute is to be disbursed one-third to defendant, two-thirds to CT Page 9152 plaintiff.
d. Each of the parties shall pay their own attorney's fees.
10. ATTORNEY FOR THE MINOR CHILDREN.
a. The court is grateful for the efforts of Attorney Denise McNair in assisting the parties to reach a negotiated settlement of their custodial issues and for the manner in which she performed those services.
b. At the conclusion of the trial, she estimated her fees to be approximately $4000. The court finds that amount to be a reasonable amount and directs the parties to each pay one half of Attorney McNair's final bill from their individual shares of the net proceeds of the sale of the family home on the day of said sale.
JOSEPH L. STEINBERG, J.